# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs at Knoxville July 27, 2010

## AARON T. JAMES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 98-C-2345      J. Randall Wyatt, Jr., Judge**

_____

**No. M2009-00721-CCA-R3-PC - Filed December 23, 2010**

_____

The Petitioner, Aaron T. James, appeals the Davidson County Criminal Court's denial of post-conviction relief from his conviction for especially aggravated kidnapping and resulting sixty-year sentence. He contends that the trial court committed plain error by (1) failing to instruct the jury on the need for unanimity as to the theory of guilt, (2) failing to require the State to elect a theory of guilt, and (3) failing to correct the prosecutor's misstatement of law during closing argument. He also contends that (4) trial counsel rendered ineffective assistance by failing to object to or request corrections for the first three issues and (5) appellate counsel rendered ineffective assistance by failing to raise these issues on appeal. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOSEPH M. TIPTON, P.J., delivered the opinion of the Court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

David R. Heroux, Nashville, Tennessee, for the appellant, Aaron T. James.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Amy Eisenbeck, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner was convicted of especially aggravated kidnapping and sentenced as a Range III, career offender to sixty years' confinement, to be served consecutively to a fifty-year sentence he was serving at the time of the offense. This court affirmed the judgment of the trial court and recited the facts of this case in the Petitioner's direct appeal:

In March of 1998, the defendant and a co-defendant, Tony Bobo, attempted to escape from Riverbend Maximum Security Prison. They first cut through the fence in the exercise yard before commandeering a delivery truck being driven by Department of Correction employee . . . . Bobo, who was armed with a prison-made knife, directed the victim into the cab of the truck and then drove into the perimeter fence. The pair was apprehended when guards overtook them before they were able to penetrate the outermost security fence.

At trial, Mark Hawood, who was working "mobile patrol" at Riverbend on the day of the attempted escape, described the facility as completely surrounded by two fences equipped with concertina and razor wires and sensors. He testified that the two fences are approximately twelve feet tall and thirty feet apart. Hawood recalled that he was in his patrol vehicle when he saw a delivery truck speeding toward the fence. According to Hawood, the truck knocked the interior perimeter fence "completely down." He stated that the driver then put the truck in reverse, drove around as if looking for a way to exit, and then returned and struck the fence in the same location. Hawood testified that he and another correctional officer opened fire on the vehicle and continued to fire until the vehicle came to a stop. The defendant was the first to exit the truck, followed by the victim, whom Hawood described as "hysterical," and finally Bobo.

Lieutenant Billy James McCleskey, who was employed by the Department of Correction as an institutional investigator and internal affairs liaison officer, testified that because both the defendant and Bobo were classified as maximum security inmates, they were allowed only one hour each day outside their cells. Lieutenant McCleskey stated that when maximum security inmates are released from their cells for recreation, they are placed inside individual recreation cages, which he described as two sets of four expanded steel cages with a walkway in the center. During his investigation, Lieutenant McCleskey discovered that the defendant had cut a hole in his exercise cage, entered into Bobo's cage and then cut a hole in Bobo's cage for entry into the exercise yard. The lieutenant testified that he

found a "prison-made knife," or "shank," that was approximately six inches long and one inch wide in the driver's side floorboard of the delivery truck.

The victim . . . , a storekeeper at Riverbend, testified that on the day of the offense she was delivering supplies to Unit 2, where the defendant and Bobo were incarcerated. She recalled that she turned off the ignition, put the keys in her pocket, and locked the doors before exiting the truck. As she walked toward the gate, she heard the fence rattle, saw the defendant and Bobo jump over the fence, and "froze" as Bobo "stuck a sharp object up to [her] neck." She testified that the defendant got into the truck first and she went in next so as to be seated between the defendant and Bobo, who was driving. When the victim asked the defendant why he was doing this, he responded, "[G]ot too much time, got too much time. We've got to get out of here." She stated that the defendant assured her that she would not be harmed.

The victim confirmed that Bobo drove the truck into the perimeter fence, knocking it down, and then backed up in order to gain more speed. She estimated that the truck was traveling approximately fifty miles per hour when it struck the fence a second time, clearing the first fence and partially tearing down the second. According to the victim, she then heard thumping sounds and the defendant instructed her to get down before convincing Bobo to surrender. The victim testified that the defendant opened the passenger side door and lay on the ground as she ran from the truck. She stated that the defendant never gave any indication that he was being held against his will.

During cross-examination, the victim conceded that Bobo had threatened her with the knife, had ordered her into the truck, and had driven the truck into the fence. She also acknowledged that the defendant repeatedly expressed a desire to surrender.

Bobo, as a witness for the defense, testified that prior to the attempted escape, he had been convicted of "several" murders, manslaughter, four counts of robbery, "and several other charges." He stated that two of his murder convictions

-3-

were the result of killing other inmates, one of whom he bludgeoned with a dumb bell and one of whom he stabbed with a shank. He recalled that he met the defendant when the two were housed together in the maximum security unit at Riverbend. According to Bobo, he discussed the escape with the defendant on two occasions prior to the day of the offense. Bobo testified that "[t]he plan was to . . . open up the exercise cages. . . . go out through the hole . . . and to go over the fences, you know, and just go on from there." Bobo claimed that the pair planned to climb over the fences by going over the pole to avoid setting off the alarms. He contended that the defendant was unaware of his "backup plan," which was to "grab the truck and go through the fences." Bobo also insisted that the defendant did not know that he was carrying a shank.

Bobo explained that he decided to carry out the alternate plan because "it took so long to get the hole in the cages." He stated that the defendant did not want to take the truck and "acted like he wanted to go back." Bobo claimed that he threatened the defendant with his weapon saying, "If your word ain't worth nothing, your life ain't worth nothing." Bobo testified that he directed the defendant to go under the fence between the exercise yard and the truck and then ordered both the victim and the defendant to get into the truck. According to Bobo, he started the truck and immediately began driving toward the fence. He testified that when he struck the second fence, the truck became stuck on the pole and the defendant told Bobo that "it was over." Bobo claimed that he refused to surrender and did not terminate the attempted escape until gunfire from correctional officers "busted the engine block." Bobo further contended that if the defendant had refused to accompany him in the truck, he would have "hurt him." Bobo admitted that he pled guilty to aggravated robbery, aggravated kidnapping, and attempted escape in connection with the incident.

During cross-examination, he acknowledged that he and the defendant had discussed escaping even before they were transferred to their cell block in Unit 2. Bobo claimed that they planned to scale the fences, which were topped with razor wire

-4-

and equipped with alarms, with no extra padding under their clothing to protect them. He acknowledged that during the investigation prior to the trial, he did not inform investigators that he threatened the defendant.

State v. Aaron T. James, No. M2004-00808-CCA-R3-CD, Davidson County, slip op. at 1-3 (Tenn. Crim. App. Jun. 21, 2005), app. denied (Tenn. Dec. 5, 2005).

The Petitioner filed a pro se petition for post-conviction relief on November 30, 2006, and an amended petition through counsel on September 21, 2007. At the post-conviction hearing, trial counsel testified that he did not object to the lack of an instruction for unanimity on the theory of guilt because he believed the law did not require it. He said that for the same reason, he did not object to the State's failure to elect one theory of guilt. When asked about the prosecutor's statement to the jury that "from the State of Tennessee's perspective, moving down to the next [lesser included offense] is an equivalent of a not guilty," trial counsel acknowledged that his lack of objection was not based on a tactical reason. He said, "[L]ooking at it now, I can see that it could have been misleading to a jury. I don't think at the time I appreciated that. But I think I probably just sat there and didn't think I had a reason to object and just let it happen." He said he did not remember that his co-counsel objected or that they discussed raising an objection.

On cross-examination, trial counsel testified that he had been a criminal defense attorney for eleven years. He said that he was the lead defense counsel of record at the trial but that his co-counsel had a few more years' experience and had served as co-counsel at the Petitioner's first trial for this offense.

At the conclusion of the hearing, the trial court stated:

> The Court finds that the facts of the alleged crime [arose] from a single event. The Court therefore finds that the failure to instruct the jury on a unanimous theory of guilt in this case was not erroneous and that [counsel's] failure to seek this instruction was not below the range of competence of an attorney in a criminal case.
>
> . . .
>
> For the reasons stated above, the Court finds that the State is not required to elect between these two theories of guilt and that [counsel's] failure to request that the trial court require this

-5-

election is not below the range of competence of an attorney in a criminal case.

. . .

The Court finds that the prosecutor's argument was made for the purpose of stating the personal effect on [the prosecutor] of a not guilty verdict for the charged count. The Court therefore finds that [counsel's] failure to object to this statement [that to the State, a conviction for a lesser included offense would be equivalent to a not guilty verdict] was not below the range of competence of an attorney in a criminal case. Furthermore, the Court finds that the jury instructions adequately cured any doubts the jury had about whether a conviction of a lesser included offense is the equivalent of a not guilty verdict. The Court therefore also finds that the Petitioner did not suffer prejudice as a result of [counsel's] failure to object.

. . .

Because the Court finds that trial counsel was not ineffective in failing to raise these issues, the Court necessarily finds that [appellate counsel's] actions in failing to preserve these issues on appeal were not below the range of competence of an attorney in a criminal case.

The burden in a post-conviction proceeding is on the petitioner to prove the allegations of fact by clear and convincing evidence. T.C.A. § 40-30-110(f) (2010); Dellinger v. State, 279 S.W.3d 282, 294 (Tenn. 2009). A petitioner is required to provide "allegations of fact explaining why each ground for relief was not previously presented in any earlier proceeding." T.C.A. § 40-30-104(e) (2010). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). Post-conviction relief may only be given if a conviction or sentence is void or voidable because of a violation of a constitutional right. T.C.A. § 40-30-103 (2010).

## I-III

The Petitioner contends that the trial court committed plain error by (1) failing to instruct the jury on the need for unanimity on the theory of guilt, (2) failing to require the State to elect a theory of guilt, and (3) failing to correct the prosecutor's misstatement of law during closing argument. The Petitioner concedes that the first two issues were not raised on direct appeal but argues that this court should review them under the plain error doctrine. The State contends that the Petitioner waived these issues by not raising them on direct appeal and that plain error analysis does not apply to waived issues at post-conviction proceedings. We agree that the first two issues are waived. See T.C.A. 40-30-106(g) (2010); Grindstaff v. State, 297 S.W.3d 208, 219 (Tenn. 2009) (stating that the plain error rule does not apply in post-conviction proceedings to grounds that would otherwise be either waived or previously determined).

The Petitioner also concedes that the prosecutor's comments on lesser included offenses were addressed on direct appeal but argues that the prosecutor's further statement that "from the State of Tennessee's perspective, moving down to the next [lesser included offense] is an equivalent of a not guilty" warrants plain error review. The State contends that the issue was previously determined on direct appeal and is therefore inappropriate for post-conviction review or alternatively, that if the statement could have been raised as a separate issue, the claim is waived. We agree that any claim about the prosecutor's statement was waived as a separate issue and is inappropriate for appellate review of a post-conviction proceeding. See T.C.A. 40-30-106(g); Grindstaff, 297 S.W.3d at 219. We hold that the Petitioner is not entitled to relief based on the trial court's actions.

## IV

The Petitioner contends that trial counsel rendered ineffective assistance by failing to request a jury instruction on the need for unanimity as to the theory of guilt, failing to move the trial court to require that the State elect a theory of guilt, and failing to object to the prosecutor's misstatement of law. The State contends that trial counsel was not ineffective because the law did not require unanimity as to the theory of guilt or election of a theory and because the prosecutor's comment during closing argument was not a misstatement of the law. We agree with the State.

If a petitioner establishes the fact of counsel's errors, the trial court must determine whether those errors resulted in the ineffective assistance of counsel. Dellinger, 279 S.W.3d at 293; see Strickland v. Washington, 466 U.S. 668, 687-88, 694 (1984). Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether

counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. Fields, 40 S.W.3d at 457.

Under the Sixth Amendment to the United States Constitution, when a claim of ineffective assistance of counsel is made, the burden is on the petitioner to show (1) that counsel's performance was deficient and (2) that the deficiency was prejudicial. Strickland, 466 U.S. at 687; see Lockhart v. Fretwell, 506 U.S. 364, 368-72 (1993). A petitioner will only prevail on a claim of ineffective assistance of counsel after satisfying both prongs of the Strickland test. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). The performance prong requires a petitioner raising a claim of ineffectiveness to show that the counsel's representation fell below an objective standard of reasonableness or "outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690. The prejudice prong requires a petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.

Our supreme court has held that attorneys should be held to the general standard of whether the services rendered were within the range of competence demanded of attorneys in criminal cases. Further, the court stated that the range of competence was to be measured by the duties and criteria set forth in Beasley v. United States, 491 F.2d 687, 696 (6th Cir. 1974), and United States v. DeCoster, 487 F.2d 1197, 1202-04 (D.C. Cir. 1973). See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). Also, in reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Thus, the fact that a particular strategy or tactic failed or even hurt the defense does not, alone, support a claim of ineffective assistance." Cooper v. State, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992). Deference is made to trial strategy or tactical choices if they are informed ones based upon adequate preparation. Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982); see DeCoster, 487 F.2d at 1201.

The Petitioner argues that trial counsel failed to request that the court instruct the jury that it must unanimously agree on the theory of guilt supporting the verdict. He argues that the jury was instructed it could find guilt based on two competing theories: that the Petitioner was the principal offender of the crime or that the Petitioner was criminally responsible for the actions of his co-defendant. A defendant is criminally responsible for an offense committed by another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the [defendant] solicits, directs, aids, or attempts to aid another person to commit the offense." T.C.A. § 39-11-402(2) (2010). The Petitioner concedes that the United States and Tennessee

-8-

constitutions have been interpreted such that instructions as to unanimity of the theory of guilt based on criminal responsibility are not required when the facts of the alleged crime arise from a single event. See State v. Lemacks, 996 S.W.2d 166, 168 (Tenn. 1999).

The Petitioner argues that this interpretation is incorrect and that the requirement of jury unanimity should apply to the theory of guilt upon which the facts supporting the elements of the crime have been proven. The Petitioner offers no authority for this argument and acknowledges that he seeks to preserve the issue for review by our state's highest court. We hold that trial counsel was not ineffective for failing to make this request because there was no meritorious basis for such a request. For the same reason, we hold that trial counsel was not ineffective for failing to request that the trial court order the State to elect a theory of guilt.

The Petitioner also argues that trial counsel rendered ineffective assistance by failing to object to the prosecutor's comment during closing argument that "from the State of Tennessee's perspective, moving down to the next [lesser included offense] is an equivalent of a not guilty." The State argues that the issue of the prosecutor's comments was previously decided on direct appeal and that this comment was a personal opinion, not a misstatement of the law. We conclude that the comment's effect was not previously determined, but we agree with the State that the comment was an expression of opinion and that trial counsel was not deficient for failing to object.

The comment at issue directly followed the prosecutor's explanation of lesser included offenses. The record shows that in the context of the prosecutor's entire closing argument, the comment was a transition between that explanation and the prosecutor's final comments, which included that only one offense was proper and that the jury should find the Petitioner guilty of especially aggravated kidnapping. The prosecutor qualified this transitional statement with the phrase, "from the State of Tennessee's perspective." We conclude that the evidence does not preponderate against the trial court's finding that this comment was not made as a statement of law.

We also agree with the trial court that any possible confusion caused by the prosecutor's comment was resolved by the court's instruction on lesser included offenses. This court addressed the trial court's instruction on direct appeal and concluded that it was a correct statement of the law. See Aaron T. James, slip op. at 11. The record shows that the trial court also instructed the jury that the law applicable to the case was stated in the jury instructions and that jurors should disregard remarks of counsel if they believed the remarks were not supported by the evidence. See State v. Welcome, 280 S.W.3d 215, 219-20 (Tenn. Crim. App. 2007) ("For the purposes of determining whether a defendant has been afforded [the right to a complete and accurate charge of the law], the jury charge should be 'viewed

in its entirety' and 'considered as a whole.'") (quoting State v. Stephenson, 878 S.W.2d 530, 555 (Tenn. 1994)). We conclude that the Petitioner was not prejudiced by trial counsel's failure to object to the prosecutor's comment. The Petitioner is not entitled to relief on this issue.

**V**

The Petitioner contends that appellate counsel rendered ineffective assistance by failing to raise on direct appeal the issues of a jury instruction for unanimity as to the theory of guilt, election of a theory of guilt, and the prosecutor's misstatement of law. The State contends that appellate counsel did not perform below a reasonable range of professional competence by failing to raise these issues on appeal. We agree.

Due process of law requires that a criminal defendant be entitled to the effective assistance of counsel on appeal. Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995) (citing Evitts v. Lucey, 469 U.S. 387 (1985)). The test by which we consider the effectiveness of appellate counsel is the same two-prong, Strickland test that we apply for trial counsel. Porterfield v. State, 897 S.W.2d 672, 677-78 (Tenn. 1995) ("Petitioner must show that counsel's performance was deficient and that Petitioner was prejudiced by this deficiency.") (citing Strickland, 466 U.S. 668; Cooper v. State, 849 S.W.2d 744, 746-47 (Tenn. Crim. App. 1993)).

We have concluded that trial counsel was not deficient for failing to request a jury instruction on unanimity as to theory of guilt or failing to request that the court order the State to elect a theory of guilt because the law did not require such an instruction or election. See Lemacks, 996 S.W.2d at 168. For the same reason, we hold that the trial court did not err in ruling that appellate counsel was not deficient for failing to raise these issues on appeal.

We have also concluded that trial counsel was not deficient for failing to raise the prosecutor's comment that "from the State of Tennessee's perspective, moving down to the next [lesser included offense] is an equivalent of a not guilty" as a separate issue from the comments considered on direct appeal. Because the Petitioner did not call appellate counsel to testify at the post-conviction proceedings, no evidence is in the record to explain why appellate counsel did not raise the comment's effect as a separate issue, and the Petitioner has offered no proof that appellate counsel's decision fell outside the reasonable range of professionally competent assistance. We hold that the trial court did not err by ruling that appellate counsel's representation was not deficient.

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
JOSEPH M. TIPTON, PRESIDING JUDGE